J-S07044-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| D.J. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| A.B. | : | |
| | : | |
| Appellant | : | No. 1652 MDA 2018 |

Appeal from the Order Entered September 4, 2018
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
5230 of 2016

BEFORE:   OLSON, J., McLAUGHLIN, J., and PELLEGRINI*, J.

MEMORANDUM BY PELLEGRINI, J.:              **FILED MARCH 12, 2019**

Appellant, A.B. (Mother), appeals from the order entered of the Court of Common Pleas of Luzerne County (trial court) denying Mother's petition for primary custody and proposed relocation with the child, instead awarding the parties shared legal custody, D.J. (Father) primary physical custody, and Mother partial physical custody with respect to the female child, A.S.J. a/k/a A.J. (Child).  Upon careful review, we affirm.

At the time of Child's birth in June 2013, Mother and Father resided together in Hudson/Plains, Luzerne County, and had been together for a little over one year.  Both are recovering drug addicts.  Mother, Father and Child

_____

*   Retired Senior Judge assigned to the Superior Court.

additionally resided with Father's daughter, S.J., and granddaughter, M.J.[1,2]

Significantly, S.J. is only one day younger than Child, and M.J. is one year

older than Child and S.J. Evidence was presented that the three girls are

extremely close and consider themselves sisters. N.T., 8/7/18 at 41, 54.

Mother and Father never married and, after an approximate four-year

relationship, separated on April 30, 2016, when Mother moved to Bangor,

Northampton County, where she grew up and where her parents, Maternal

Grandparents, and brother, Maternal Uncle, still resided. At the time, Mother

had been working in Northampton County for one year.[3] Upon Mother's move

to Northampton County, Mother moved in with Maternal Grandparents and

Maternal Uncle and continued to live with Maternal Grandparents at the time

of the hearings.[4,5] As Mother initially took Child with her, Father initiated the

---

[1] Father also had and continued to have custody of another daughter, M.J., every other weekend, and two sons in the summer. N.T., 8/7/18, at 11.

[2] Father obtained primary custody of M.J. when she was eight or nine months old and S.J. when she was three months old. N.T., 8/7/18, at 49-50.

[3] Mother indicated that she subsequently obtained new employment. N.T., 8/7/18, at 13.

[4] Mother testified on August 7, 2018, that her brother, Maternal Uncle, had moved out of Maternal Grandparents' residence approximately one year prior but remained nearby. N.T., 8/7/18, at 9.

[5] Father continued to reside just down the street from where he resided with Mother in Hudson/Plains, Luzerne County. N.T., 8/7/18, at 10.

within custody action in Luzerne County filing a Complaint for Custody and an Emergency Petition for Special Relief.[6]  After conciliation conference and by agreement, the trial court entered an order dated July 6, 2016, and filed July 8, 2016, that the parties were to exercise shared legal custody, with Father to exercise primary physical custody and Mother partial physical custody every other weekend from Friday at 6:15 p.m. until Sunday at 6:15 p.m.[7, 8]  Interim Order, 7/8/16.

On August 12, 2016, Mother served and filed a Petition and Notice for Relocation with Child to Bangor, Northampton County, requesting to relocate with Child as soon as possible and/or within thirty days for "better opportunities" and a "chance to blossom into herself in a calming

---

[6] Mother then commenced an action in Northampton County which she subsequently agreed to withdraw, and the parties thereafter agreed to shared legal custody with primary physical custody with Father.  Interim Order, 5/25/16; **see also** N.T., 8/7/18, at 7-8.

[7] This order remained the controlling custody order at the time of the hearings. Notably, however, pursuant to subsequent order dated June 28, 2018, and entered June 29, 2018, Mother's custodial time was extended for the summer, "from the last day of school until the start of the 2018-2019 school year," to every other Thursday at 6:15 p.m. to Sunday at 6:15 p.m.  Interim Order, 6/29/18, at ¶2.  Aside from recognizing and directing Father as to his Coordinated Child Care funding, the order approved a week of vacation for Mother in July 2018.  **Id.** at ¶¶1, 3.

[8] Pursuant to order dated December 15, 2016, and filed December 19, 2016, Mother's partial physical custody was additionally restricted to Northampton County, subject to three days' advance notice to and the agreement of Father. Order, 12/19/16.

environment." *Id.* at ¶4g; *see also* N.T., 8/7/18, at 42-43. In response, Father filed a Counter-Affidavit Regarding Relocation objecting to the relocation and modification of the custody order on August 24, 2016. Counter-Affidavit Regarding Relocation, 8/24/16.

On February 10, 2017, Mother, through counsel, filed a Petition for a Relocation Hearing. Petition for a Relocation Hearing, 2/10/17. As an alternate schedule of physical custody, Mother proposed Father have partial physical custody every other Friday at 6:15 p.m. to Sunday at 6:15 p.m. *Id.* at ¶9. Further, Mother asserted the relocation to be in the best interests of the child as Mother "has family support and assistance with childcare as well as substantially greater employment in the Northampton County area." *Id.* at ¶11.

## I.

Before we begin, to better understand what follows, it is worthwhile to set forth the well-settled law regarding custody disputes. The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Child custody actions are governed by the Child Custody Act, 23 Pa.C.S. §§ 5321-5340. Trial courts are required to consider **"[a]ll** of the factors listed

in section 5328(a) . . . when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); ***see also A.V. v. S.T.***, 87 A.3d 818, 823 (Pa. Super. 2014) (providing that trial courts shall set forth the mandatory assessment of the Section 5328(a) best-interest factors "prior to the deadline by which a litigant must file a notice of appeal") (citation omitted). This statutory section provides as follows.

**§ 5328. Factors to consider when awarding custody.**

**(a) *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a). Now to the proceedings before the trial court.

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

> (10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). *See E.D.* at 81-82 ("Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.")

## II.

The trial court conducted hearings on August 16, 2017, and August 7, 2018. During the hearings, the court heard from Maternal Grandmother, J.B.; Mother's friend, A.F.; Paternal Grandmother, E.J.; and Father's friend, T.C. Mother and Father, represented by counsel,[9] each additionally testified on their own behalf. In addition, the court then spoke with Child, who was five years old at the time, *in camera*, on August 21, 2018.[10, 11] At the court's

---

[9] We observe that counsel who represented Father on August 16, 2017, unexpectedly passed away shortly thereafter. *See* Motion for Continuance, 10/3/17, at ¶2; *see also* Petition for Special Relief, 12/5/17, at ¶4. This resulted in several continuances. *See* Order 2/16/18; *see also* Order 10/3/17. Father was represented by new counsel on August 7, 2018. Subsequent to the instant appeal, Father's new counsel filed a motion to withdraw as counsel on November 21, 2018, which was granted by this Court on November 27, 2018. As such, Father filed his brief with this Court *pro se*.

[10] Both counsel for Mother and Father were present and given the opportunity to ask Child questions. N.T., 8/21/18, at 20-23.

[11] Child testified that she wants to spend more time with Mother because she only gets to spend a little bit of time with her and misses her. N.T., 8/21/18, at 11, 19.

direction, Mother filed a petition for primary physical custody on August 22, 2018.[12]

On September 4, 2018, the trial court denied Mother's petition for primary custody and proposed relocation with the Child and awarded the parties shared legal custody, Father primary physical custody, and Mother partial physical custody. Specifically, Mother was awarded partial physical custody every other weekend from Friday at 6:15 p.m. until Sunday at 6:15 p.m. during the school year, and from Thursday at 6:15 p.m. to Sunday at 6:15 p.m. during the summer. The order additionally addressed, among other things, holidays, vacations, transportation and telephone contact. Aside from an alternating holiday schedule, each party was afforded two non-consecutive weeks of vacation with thirty days' notice to the other party, as well as

_____

[12] The trial court stated:

. . .Obviously, one cannot petition for relocation without having primary physical custody. So[,] therefore, I am going to require counsel for [Mother] to remedy this defect and file a petition for primary physical custody – she obviously seeks it, and the testimony certainly supports that wish – so that I may act. But, so everybody realizes, my first decision will be whether [M]other should have primary physical custody, and if I determine that she should not, that's where the inquiry and the decision making ends. If I determine that she should have primary physical custody, then I will engage in a decision as to whether relocation is proper.

N.T., 8/7/18, at 131-32.

reasonable telephone contact. Further, transportation was the responsibility of Mother.

In its 1925(a) opinion, [13] the trial court addressed the custody factors pursuant to Section 5328(a) and 23 Pa.C.S. § 5337(h). In examining the factors set forth, the court found Section 5328(a)(2) and (15) inapplicable.[14] The court determined that Section 5328(a)(1), (2), (3), (4), (5), (7), (8), (9), (10), (11), (12) and (13) favor both parties or were neutral. The trial court

_____

[13] While Mother did not comply with Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal concurrently with her notice of appeal, as Mother filed a statement only one week later and there is no assertion of any prejudice, we do not quash or dismiss her appeal. **See In Re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, but did not result in dismissal or quashal where there was no prejudice to the other parties as a result of the late filing); **Cf. Mudge v. Mudge**, 6 A.3d 1031 (Pa. Super. 2011) and **J.M.R. v. J.M.**, 1 A.3d 902 (Pa. Super. 2010) (failure to file a Rule 1925(b) statement, when ordered by the Superior Court, will result in a waiver of all issues on appeal); **J.P. v. S.P.**, 991 A.2d 904 (Pa. Super. 2010) (finding that the appellant waived issues for appeal by failing to comply with the trial court's order directing her to file a Rule 1925(b) statement within 21 days).

[14] Mother and Father are both diagnosed with depression and anxiety for which they take medication and for which Father receives disability. N.T., 8/7/18, at 22, 25, 51, 90-91. Additionally, Father suffered a foot injury in 2013 while working a construction job. **Id.** at 51-52.

determined that Section 5328(a)(6), (14) and (16) favored Father and against

Mother.[15, 16] *Id.* at 5-10.

In explaining its decision regarding factor 6, the trial court stated that it

was a significant factor explaining:

> Both Mother and Father acknowledge that[,] for the past
> two years, Father has had primary physical custody of A.J. Mother
> admitted on cross-examination that she left Luzerne County on
> April 30, 2016[,] and[,] since that time[,] the minor child has been
> primarily residing with her father.
>
> Father testified that he resides [in] Hudson, Pennsylvania.
> He further testified that the minor child resides with him, his other
> daughter, S.J., and his granddaughter, M.J. All three (3) children
> are close in age. Father testified that his granddaughter, M.J., is
> six years old; S.J., his daughter, is five years old and his daughter,
> A.J.[,] is also five years old. Father further testified that his child,
> M.J., who is 10 years old, visits him from Allentown every other
> weekend. Father emphasized that he's had primary physical
> custody of his six[-]year[-]old granddaughter M.J., since she was
> eight or nine months old. He also has had primary physical
> custody of his five[-]year[-]old daughter, S.J.[,] since she was
> three months old.
>
> Father testified that the minor child, A.J., his daughter, S.J.,
> and his granddaughter, M.J.[,] are very close to each other. The
> minor child considers them to be her sisters. Father stated that
> A.J. is well aware that M.J. is her niece; however, the girls like to
> consider themselves as sisters. Father describes their relationship
> as very close. Father testified that the children are involved in
> many activities in the camp they attend during the summer. The
> children go to different trips throughout the week. Father also
> testified that he walks with the children around the neighborhood.
> He takes them to the park. He also takes them bike riding as well

---

[15] The trial court incorrectly refers to Section 5328(a)(14) as Section 5328(a)(15).

[16] The court stated similarly in its order of September 4, 2018.

as having them ride their scooters. Father testified that the children have a "bubble machine" that they play with in the backyard. Father stated that he takes the children swimming at the neighbor's backyard pool. He also has cookouts with the children and arranges play dates for the children with their friends.

In considering sibling relationships, the court is well aware that the [f]ather's granddaughter is A.J.'s niece even if A.J. believes that she is her sister. The court also realizes that it is difficult to explain to a five year old or even for a five year old to visualize that she is the aunt of a six year old. Of course, as the children get older, it will be easier for them to understand their relationship. The child, A.J., however, also has a half-sister, S.J., who has been residing with her for two (2) years and who is the same age. It is obvious from the [f]ather's testimony that the girls are very close. The child, [*in camera*], testified that she has three (3) sisters. She stated that she resides with two of her sisters and that she likes playing with them. She stated that they play with dolls and cars. In this case, the preservation of sibling relationships is important since Mother resides one and one half hours from Father's residence. If Mother was to have primary physical custody, A.J. would only see her sibling twice per month in light of the distance between the two residences. The children have a very close bond as they have been residing together with the Father in excess of two years.

As to factor 14 weighing in favor of Father and against Mother, the trial

court stated:

This factor also pertains to one of the alleged errors raised by the Mother, namely that the [c]ourt failed to consider Father's drug history. Mother testified that in 2010 (prior to the minor child's birth) while Mother was battling drug addiction, she was involved in a bank robbery with a former boyfriend. She indicated that she was in an abusive relationship. At the time, Mother was abusing prescription drugs and also using heroin. With respect to the bank robbery, [M]other admitted that she was a driver during that incident and that she worked with the prosecution and was not criminally charged.

Mother testified that she entered into a thirty (30)[-]day rehabilitation facility and subsequently stayed in Dallas, PA at a halfway house for six months. She stated that she does not attend

- 12 -

AA ["Alcoholics Anonymous"] meetings; however, she has a counselor that she meets with at her church support group. Mother did indicate that she has been sober for six years.

Father stated that [M]other was seen drinking approximately a year ago. Father indicated that one cannot be drinking and still be in recovery. [Maternal Grandmother] admitted on cross-examination that her daughter had a previous drug history. [Maternal Grandmother] further admitted that between the age of 17 until Mother began residing with Father, Mother had a drug history. [Maternal Grandmother] admitted that prior to Mother moving with Father, Mother overdosed and as a result was in the hospital. [Maternal Grandmother] further admitted that when Mother moved in with Father, Mother was in recovery. According to [Maternal Grandmother], Mother does not go to any AA meetings[,] nor does she have a sponsor. She has a support group with the church. When asked on cross[-]examination whether Mother still consumes any alcohol, [Maternal Grandmother]'s response was that she occasionally drinks a glass of wine. According to [Maternal Grandmother], although [M]other has a drug history, Mother did not have an alcohol problem. The [c]ourt takes into consideration the testimony of Mother's friend, [A.F.]. [A.F.] indicated that she has known Mother during her addiction and also after her recovery. [A.F.] finds that Mother has conquered her addiction and is capable of having primary physical custody of the minor child. [A.F.] further stated that she has never seen Mother consume any alcohol in her presence.

Father testified that he had a history of substance abuse and currently he is in recovery for eight (8) years. He stated that he travels to different facilities and conducts meetings in order to help people who are still struggling with the disease of addiction.

The [c]ourt finds Father seems to be more involved in his recovery than Mother. Father still works with people with addiction and he has been sober longer than Mother. Not only that, but the maternal [g]randmother admitted that Mother still occasionally drinks wine. Although Mother had stated that her addiction involved prescription pills and heroin, this court views alcohol as a substance from which a person in recovery should abstain.

- 13 -

As to factor 16 regarding other relevant factor, the trial court found that there was no credible evidence presented to change the status quo.

> Father has had primary physical custody of A.J. for in excess of two (2) years. Based upon the testimony given, the child is very happy and is attached to her half[-]sister, S.J.[,] and the [f]ather's granddaughter, M.J., who is only six (6) years old. The court finds that the status quo should be preserved and that Father's primary physical custody should [] not be disrupted. The child and her sister attend [k]indergarten together. They're involved in activities together and love being together.
>
> The court will not significantly disrupt the current schedule since it would not be in the child's best interest. . . .

Trial Court Opinion, 11/1/18, at 4-9 (emphasis in original) (citations to record omitted).

Even though it found that Mother should not be awarded primary physical custody, the trial court additionally addressed the relocation factors pursuant to Section 5337(h). *Id.* at 10-14. The court found Section 5337(h)(9) inapplicable. *Id.* at 11. The court determined Section 5337(h)(2), (4), (5), (7) and (8) favored both parties or were neutral. *Id.* at 10-11. Conversely, the court determined Section 5337(h)(1), (3) and (6) favored Father and against Mother.[17] *Id.* at 11-14.

Regarding factor 1 involving the nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate

---

[17] The court stated similarly in its order of September 4, 2018.

and with the nonrelocating party, siblings and other significant persons in the child's life, the trial court stated:

> Both Mother and Father are attentive with A.J. and are involved with the child when the child is in his or her custody. However, the court finds that the child's relationship with her [f]ather and her sibling weighs more in favor of the [f]ather. With respect to the [m]other, [Maternal Grandmother] testified that the mother is very attentive to her child. When the minor child visits her mother, [M]other spends the entire period of time with her. She takes her swimming to the pool. She takes her to the movies and to the beach. She also has the minor child attending family events. [Maternal Grandmother] describes the minor child as very loving and very pleasant.
>
> With respect to the [f]ather, Father testified that he works three (3) days per week and has two days off from work on Fridays and Mondays. He, therefore, has a four-day weekend that he's able to spend time with the children. Father further testified that he is on the parent committee of the [c]hild's day care. He also stated that he is the state delegate representative for Headstart. Father emphasizes that he teaches A.J. to be an individual and to express her creativity, educationally and in other aspects.
>
> This [c]ourt is also considering the length of time that [] A.J. has been residing with her half-sister[,] which is in excess of two (2) years. Father testified that the minor child and his daughter, S.J., as well as his granddaughter, M.J. are very close to each other. The minor child considers them to be her sisters. Father stated that A.J. also is well aware that M.J. is her niece; however, the girls like to consider themselves as sisters. Father describes their relationship as very close. Father testified that the children are involved in many activities in the camp they attend during the summer. The children go to different trips throughout the week. Father also testified that he walks with the children around the neighborhood. He takes them to the park. He also takes them bike riding as well as have them ride their scooters. Father stated that he also takes the children swimming at the neighbor's residence. He has cookouts with the children and has them involved in play dates with their friends.
>
> The child, A.J.[,] also has her half-sister, S.J., who has been residing with her for two (2) years and who is the same age.

- 15 -

Father testified that the girls are very close. The child, in the [*in camera*] interview, testified that she has three (3) sisters. She stated that she resides with two of her sisters and that she likes playing with them. She stated that they play with dolls and cars.

*Id.* at 10-14.

As to factor 4 involving that the feasibility of preserving the relationship between the non-relocating party, the trial court found that:

> [I]t is difficult for Mother to preserve the relationship between Father and the child considering that Father has had primary physical custody of the child for over two (2) years and Mother is the one proposing to relocate with the child. Mother's custodial period is every other weekend during the school year. This is not a case where Mother has primary physical custody of the child and is seeking to relocate with the child and is offering substituted visits for Father.

As to factor 6 which addresses whether the relocation will enhance the general quality of life for the party seeking the relocation, the trial court found that:

> This factor is weighed in favor of the Father. Mother in this matter relocated to Bangor[,] Pennsylvania without the child prior to filing a Petition for Relocation. Mother did testify that she has a new employment position. Mother testified that she is [a] scheduling coordinator [at a hospital cancer institute] and that she had this position for approximately one year. Mother testified that prior to her new employment, she worked at a hospital for two years as a scheduler. The court would have considered whether Mother's relocation would enhance her general quality of life except in this case, Mother relocated prior to filing a Petition to [R]elocate.

**III.**

On appeal, Mother raises the following issues for our review:

1. Did the [t]rial [c]ourt commit an error of law and abuse its discretion by failing to grant [Mother]'s request for primary custody when the custody factors weighed in her favor?

- 16 -

2.   Did the [t]rial [c]ourt commit[] an error of law and abuse its discretion by failing to grant [Mother]'s request for relocation when the relocation factor[s] weighed in her favor?

3.   Did the [t]rial [c]ourt commit an error of law and abuse its discretion in finding custody factor 6 weighed in favor of [Father]?

4.   Did the [t]rial [c]ourt commit an error of law and abuse its discretion by finding custody factor 14 weighed in favor of [Father]?

Mother's brief at 3.[18]

Turning to Mother's first two issues on appeal, Mother makes a generalized claim that the trial court erred and/or abused its discretion in failing to find that the custody and relocation factors pursuant to 23 Pa.C.S. § 5328(a) and 23 Pa.C.S. § 5337(h) weighed in her favor. In her brief, Mother suggests that Section 5328(a)(1), (4) and (10) were weighed incorrectly and should have been weighed in her favor. *Id.* at 11-13.  Moreover, as to

_____

[18] Our standard of review in child custody cases is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

- 17 -

relocation, Mother suggests that Section 5337(h)(1), (3), (5) and (6) were weighed incorrectly and should have been weighed in her favor.

As to these issues, we agree with the trial court that those issues were waived as Mother's Rule 1925(b) statement was not specific and/or detailed enough as to the factors Mother claimed the court failed to weigh in Mother's favor. The trial court reasoned,

> . . .The [c]ourt finds that two of those alleged errors do not comply with Pa.R.A.P. 1925(b)(4)(ii) which states as follows:
>
> (ii) The Statement shall concisely identify each ruling of error that the appellant intends to challenge with **sufficient detail to identify all pertinent issues** for the judge. (emphasis added).
>
> The two alleged errors that this [c]ourt finds are not in compliance with Pa.R.A.P. 1925(b)(4)(ii) are as follows:
>
> 1. That the trial court abused its discretion and erred as a matter of law in not granting [Mother]'s [r]equest for primary physical custody when the custody factors weighed in favor of [Mother]; and
>
> 2. That the trial court abused its discretion and erred as a matter of law in denying [Mother]'s [r]equest for [r]elocation when the relocation factors weighed in favor of [Mother] based upon the evidence presented.
>
> In the [c]ourt's Order of September 4, 2018, the court specifically stated which custody factors and relocation factors favored both of the parties and which factors weighed in favor of either Mother or Father.
>
> The custody factors outlined in 23 Pa.C.S. §5328(a) total fifteen (15). The relocation factors outlined in title 23 Pa.C.S. §5337(h) total nine (9). In the above alleged errors, Mother needed to specifically identify which factors in custody and relocation that she alleges the [c]ourt abused its discretion in weighing against her. Pennsylvania Rule of Appellate Procedure 1925(b)(4)(vii) states that issues not included in the Statement and/or not raised pursuant to the provisions outlined in

- 18 -

[subsection](b)(4) are waived. Therefore, due to Mother's failure to identify which factors the court failed to hold in Mother's favor in the custody and relocation matters, the court finds that these two arguments are waived.

Trial Court Opinion, 11/1/18, at 1-2.[19] ***See Krebs v. United Refining Co. of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues). In any event, Mother, in issues three and four, did raise issues as to specific custody factors and irrespective of waiver, we would find these claims meritless.

With her third issue that Section 5328(a)(6) regarding the Child's sibling relationships, Mother contends that the trial court erred in finding this factor favored Father as it afforded too much weight to this factor and Child's relationships with her siblings through Father. Mother's brief at 16-17. Mother argues that the trial court's determination that Father should have primary custody of the Child due to her relationship with her siblings is only one factor and not a controlling factor in the ultimate custody decision, and was given more weight that the law allows by the trial court and should not have been applied in Father's favor.

---

[19] Notably, in the Argument section of her brief, Mother maintains that, as to the custody factors, Section 5328(a)(1), (4) and (10) should have been weighed in her favor. Mother's brief at 11-13. She further indicates that Sections 5328(a)(6) and (14) were to be discussed separately. ***Id.*** at 11. Moreover, as to the relocation factors, Mother asserts that Section 5337(h)(1), (3), (5), (6) and (7) should have been weighed in her favor. ***Id.*** at 14-16.

Lastly, with her fourth issue, Mother asserts that the trial court committed an error in weighing Section 5328(a)(14), the history of drug or alcohol abuse of a party or member of a party's household, in Father's favor. Mother argues that both parties have a history of drug abuse and that, as Mother attended a rehabilitation program followed by six months' residence in a halfway house and continued to receive the support of her friends and family, the factor should have been weighed equally. *Id.*

With regard to the custody and relocation factors, we have stated that the trial court is required to consider all such factors. *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013). Critically, as we stated in *M.J.M.*:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. *See A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* (emphasis added).

All of Mother's challenges, waived an unwaived, go to the trial court's conclusions and assessments and asks this Court to re-find facts, re-weigh evidence and/or re-assess credibility to her view of the evidence. Under the standard of review applicable in custody matters, we are not permitted to disturb the trial court's findings of fact and determinations regarding credibility and weight of the evidence absent an abuse of discretion. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As we stated in **Ketterer v. Seifert**, 902 A.2d 533, 540 (Pa. Super. 2006) (**quoting Jackson v. Beck**, 858 A.2d 1250, 1254 (Pa. Super. 2004)):

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Moreover, it is not our function to determine whether the trial court reached the "right" decision but rather "based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion. . . ." **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa. Super. 2005).

We find that the trial court did not err or abuse its discretion in its decision regarding custody or relocation. The trial court cogently analyzed the custody and relocation factors pursuant to Section 5328(a) and Section 5337(h), and after careful review of the record, we determine that the trial

court's findings and determinations are supported by competent evidence in the record.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/12/2019